IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD L. LEWIS, | ) |
| Petitioner, | ) |
| v. | ) C.A. No. 18-2028 (MN) |
| ROBERT MAY, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | ) |
| Respondents.[1] | ) |

## MEMORANDUM OPINION

Richard L. Lewis – *Pro se* Petitioner.

Sean P. Lugg, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorneys for Respondents.

July 27, 2022
Wilmington, Delaware

---

[1] Warden Robert May has replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. 25(d).

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is a Petition and an Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (hereinafter collectively referred to as "Petition") filed by Petitioner Richard L. Lewis ("Petitioner"). (D.I. 3; D.I. 18). The State filed an Answer in opposition. (D.I. 22). For the reasons discussed, the Court will deny the Petition.

**I.  BACKGROUND**

> Throughout his criminal career, [Petitioner] has been a second story man; a cat burglar of discerning tastes. He was convicted of his first residential burglary in 1978. He was convicted of two more in 1981, seven burglaries in 1993 (originally a 44 count indictment), and another in Pennsylvania in 2007. [Petitioner] consistently sought out high-end homes in affluent neighborhoods and gained entry through a second floor window. Wearing gloves and a hooded sweatshirt pulled around his face, he would take only high value items. When finished, [Petitioner] would load the booty into a pillowcase, go to his vehicle, change his clothes and leave.
>
> In 2015, New Castle County Police Detective DiNardo was assigned to investigate a spate of residential burglaries in the Greenville area. After one such burglary, the detective found late night security footage from a store parking lot near the victimized residence. Detective DiNardo determined that a white car exiting the lot was likely a 199[9] white Lexus GS400 owned by [Petitioner]. Based partly on that footage, Detective DiNardo sought and obtained a warrant to attach a GPS device to [Petitioner's] Lexus.

*State v. Lewis*, 2021 WL 1118114, at *1 (Del. Super. Ct. Mar. 23, 2021).

> The first GSP [sic] warrant was issued on June 25, 2015, giving the police authority to attach a GPS tracking device to [Petitioner's] 1999 Lexus GS400. Although the affidavit in support of the June 25, 2015, warrant requested that the warrant "authorize members of the New Castle County Police to monitor the data provided by the GPS unit both within and outside the State of Delaware," the warrant did not expressly authorize monitoring outside the State of Delaware. Rather, the Superior Court's warrant read: "The Mobile Tracking Device is to be installed within the State of Delaware." The authorization was for a 30-day period beginning upon installation of the device, and the order specified that the device be removed at the end of the period.

1

> After GPS surveillance began, the police gained additional information from tracking [Petitioner] inside the State of Delaware that helped support probable cause to apply for a new warrant extending the June 25, 2015, warrant for an additional 30 days.
>
> On August 10, 2015, the New Castle County police applied for a third warrant to attach a GPS device to a Ford Explorer. The application for that warrant recites that after the Lexus remained in one location for several days, the police learned that on July 30, 2015, [Petitioner] purchased a brown 2003 Ford Explorer. Based upon the information from the two previous warrants and this new information, the Superior Court issued a warrant on August 10, 2015, authorizing a GPS device to be installed on the Ford Explorer. On September 11, 2015, the police applied for a fourth warrant extending the August 10, 2015, warrant for an additional 30 days. The warrant was issued authorizing that a tracking device to "be installed within the State of Delaware" on [Petitioner's] brown 2003 Ford Explorer.

*Lewis v. State*, 271 A.3d 188 (Table), 2022 WL 175771, at *1 (Del. Jan. 20, 2022) (cleaned up). Petitioner was arrested in October 2015 for eight burglaries. *See Lewis*, 2021 WL 1118114, at *2.

In January 2016, a New Castle County grand jury indicted Petitioner on three counts of second degree burglary, attempted second degree burglary, two counts of felony theft, receiving stolen property, and two counts of criminal mischief. (D.I. 21-3 at 12-15). Petitioner filed a motion to suppress the GPS evidence and the Superior Court denied the motion as untimely. (D.I. 21-11 at 30-113; D.I. 21-11 at 114). Petitioner's first trial began on June 14, 2016, but ended in a mistrial. *See Lewis*, 2021 WL 1118114, at *2. "After the mistrial, the [Superior] Court agreed to consider the untimely, procedurally barred motion to suppress," *id*., and denied the motion after a hearing. (D.I. 21-1 at 7, Entry No. 46; D.I. 21-12 at 114). On December 2, 2016, a Delaware Superior Court jury convicted Petitioner of all charges. *See Lewis v. State*, 180 A.3d 40 (Table), 2018 WL 619706, at *1 (Del. Jan. 29, 2018). In February 2017, Petitioner was sentenced as a habitual offender to an aggregate term of twenty-six years of incarceration. *See id*. Petitioner appealed, and the Delaware Supreme Court affirmed his convictions and sentence. *See id*. at *7.

In December 2018, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 21-13 at 216-234). The Superior Court appointed counsel to represent Petitioner, and post-conviction counsel filed an amended Rule 61 motion in November 2019. (D.I. 21-13 at 238-283). The Superior Court denied the amended Rule 61 motion, and the Delaware Supreme Court affirmed that judgment on January 20, 2022. *See Lewis*, 2021 WL 1118114, at *6; *Lewis,* 2022 WL 175771, at *4.

In the meantime, on December 19, 2018 and just days after filing his Rule 61 motion in the Superior Court, Petitioner filed in this Court his initial § 2254 Petition. (D.I. 2). On October 28, 2019, Petitioner filed an unopposed motion to stay the instant proceeding in order to permit him an opportunity to pursue an ineffective assistance of counsel claim in his Rule 61 proceeding. (D.I. 13; D.I. 16). The Court granted Petitioner's motion to stay on December 16, 2019. (D.I. 17). On March 2, 2022, after the Delaware Supreme Court denied his Rule 61 appeal, Petitioner filed an amended Petition in this Court. (D.I. 18). The Court lifted the stay and ordered the State to respond. (D.I. 20). The State filed an Answer in opposition, after which Petitioner filed a Memorandum in Support. (D.I. 22; D.I. 24). Two months later, Petitioner filed another Motion to Stay the proceeding, to which the State filed a Response in opposition. (D.I. 26; D.I. 28).

## II. STANDARD OF REVIEW

When a state's highest court has adjudicated a federal habeas claim on the merits,[2] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state

---

[2] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

3

court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*. In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

Finally, when performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*,

4

250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

### III.  DISCUSSION

Petitioner's timely filed Petition asserts the following two grounds for relief: (1) the Superior Court erred by declining to suppress the GPS evidence secured through defective warrants (D.I. 18 at 5); and (2) trial and appellate counsel provided ineffective assistance in their handling of Petitioner's challenges to the GPS warrants (D.I. 18 at 8).

####    A.   Claim One: Fourth Amendment Violation

In Claim One, Petitioner contends that the Superior Court violated his Fourth Amendment rights by failing to suppress the GPS evidence. He argues that the "(i) the affidavit supporting [the] GPS warrants did not establish probable cause; and (ii) the Superior Court lacked jurisdiction to authorize GPS tracking beyond Delaware's borders." (D.I. 18 at 5-6).

Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), a federal habeas court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *Id.*; *see also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1980); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980). Conversely,

5

a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing that Fourth Amendment argument. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Significantly, "an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id*.

In this case, Petitioner filed an amended motion to suppress the GPS evidence pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure during the pre-trial stages of his re-trial. The Superior Court denied that motion after conducting a hearing. Petitioner then challenged the Superior Court's denial in his direct appeal to the Delaware Supreme Court, presenting the same two-pronged argument he raises in the instant Claim. The Delaware Supreme Court affirmed the Superior Court's judgment after rejecting Petitioner's lack-of-probable-cause argument as meritless, and his jurisdictional argument as waived due to Petitioner's failure to present the argument to the Superior Court during his criminal proceeding. *See Lewis*, 2018 WL 619706, at *5.

This record clearly demonstrates that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the Delaware state courts. The fact that Petitioner disagrees with these decisions and/or the reasoning utilized therein is insufficient to overcome the *Stone* bar. Therefore, the Court will deny Petitioner's Fourth Amendment argument as barred by *Stone*.

**B.     Claim Two:  Ineffective Assistance of Counsel**

Next, Petitioner argues that trial counsel provided ineffective assistance "by not presenting a meaningful argument that Delaware police may not track someone or conduct searches and seizures outside the state of Delaware with the assistance of a GPS device" ("continuing

6

monitoring" argument). (D.I. 18 at 8). He also argues that appellate counsel provided ineffective assistance by not raising "the continued monitoring argument on appeal." (D.I. at 18 at 9). The Superior Court denied these same arguments as meritless in Petitioner's Rule 61 proceeding, and the Delaware Supreme Court affirmed that decision. Therefore, Claim Two will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. The second *Strickland* prong requires the petitioner to demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id*. at 687–96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id*. at 688. A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Finally, claims alleging ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656

7

(3d Cir. 2004). An attorney's decision about which issues to raise on appeal are strategic,[3] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). In this case, the Delaware Supreme Court's decision was not contrary to clearly established federal law because it correctly identified the *Strickland* standard applicable to Claim Two. *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir.2008) (Pennsylvania Supreme Court's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When performing the second prong of the § 2254(d)(1) inquiry, the Court must review the Delaware state court's decision with respect to

---

[3]  *See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

8

Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens.[4] *See Richter*, 562 U.S. at 105. Notably, when § 2254(d)(1) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id*. And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 101.

After reviewing the record, the Court concludes that the Delaware state courts did not unreasonably apply *Strickland* in denying Claim Two. The Superior Court denied Claim Two as meritless, explaining:

> At the time of [Petitioner's] trial, the law was undecided as to whether Delaware police may track subjects beyond state borders pursuant to validly issued GPS warrants . . . Even today, the Supreme Court has not ruled on the issue.

*Lewis*, 2021 WL 1118114, at *4. The Superior Court further opined that, "even if [counsel had effectively raised the issue of first impression], the issue would not have been decided in his favor and he therefore suffered no prejudice." *Id*. at *5. In affirming the Superior Court's decision, the Delaware Supreme Court stated that it did "not believe that trial and appellate counsel's failure to

---

[4] As explained by the *Richter* Court,
> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

9

make the continued monitoring argument 'more effectively' renders their performance ineffective under *Strickland*." *Lewis*, 2022 WL 175771, at *4. Addressing *Strickland*'s performance prong, the Delaware Supreme Court found:

> [A]t the time of [Petitioner's] trial and appeal, there was no procedural guidance on the 'continued monitoring' issue from [the Delaware Supreme] Court or the United States Supreme Court. As correctly noted by the Superior Court in this case, it is well-established that counsel has no duty to anticipate changes in the law. Nor does counsel have a duty to foresee new developments in the law which lie in the future.

*Id*. Further, when considering *Strickland*'s prejudice prong, the Delaware Supreme Court concluded:

> [Petitioner's] argument that he suffered prejudice as a result of the conduct of his trial and appellate counsel must also be rejected. In order to show prejudice, [Petitioner] would have to show that continued GPS monitoring outside Delaware violated his constitutional or statutory rights. But since neither [the Delaware Supreme Court] nor the [United States] Supreme Court has ruled on the issue, no such showing can be made.

*Id*.

Given the absence of applicable Supreme Court or Delaware Supreme Court precedent on the issue, Petitioner cannot demonstrate a reasonable probability that the outcome of his trial and appeal would have been different but for trial and appellate counsel's failure to argue that the Delaware police cannot track someone outside the state of Delaware pursuant to a validly issued GPS warrant. Moreover, although trial and appellate counsel did not pursue the precise argument in the motion to suppress that Petitioner believes they should have pursued – namely, an argument that the "continued extraterritorial GPS tracking" violated Petitioner's Fourth Amendment rights (D.I. 24 at 29, 32, 35), both attorneys aggressively presented other arguments for suppressing the evidence obtained via the GPS tracking. For instance, both attorneys argued that there was no

10

probable cause to issue the search warrant in the first place. Both attorneys also presented a "statutory" version of Petitioner's Fourth Amendment argument, namely, that all of the GPS warrants were invalid under 11 Del. Code § 2304 because the Superior court lacked jurisdiction to track Petitioner beyond the Delaware state border, which, in turn, meant that all evidence obtained through those warrants was fruit of the poisonous tree that should have been suppressed. (D.I 21-12 at 73-76, 104-109; D.I. 21-13 at 178-80). Petitioner fails to acknowledge that trial counsel is afforded "wide latitude to make decisions concerning legal arguments and strategy," *Strickland*, 466 U.S. at 689, and appellate counsel is not obliged to advance every colorable argument that could be made. *See Jones v*, 463 U.S. at 754. As both Delaware state courts explained, an attorney is not ineffective for failing to raise novel arguments and, since neither the Delaware Supreme Court nor the United States Supreme Court has held that a defendant's Fourth Amendment rights are violated by the admission of evidence obtained as a result of continued extraterritorial GPS tracking, trial and appellate counsel's failure to pursue the exact Fourth Amendment/jurisdictional argument Petitioner asserts they should have pursued did not constitute deficient performance under *Strickland*'s first prong.

Thus, looking through the doubly deferential lens applicable to ineffective assistance of counsel claims on federal habeas review, the Court concludes that the Delaware state courts reasonably applied the *Strickland* standard in denying Petitioner's instant ineffective assistance of counsel argument. Accordingly, the Court will deny Claim Two for failing to satisfy § 2254(d).

## IV.   PENDING MOTIONS

Petitioner filed two motions soon after filing his amended Petition: (1) a Motion to Stay the instant proceeding (D.I. 26); and (2) a Motion to Appoint Counsel (D.I. 19).

In his Motion to Stay, Petitioner asks the Court to stay the instant proceeding to enable him to return to state court to present claims concerning the constitutionality of a search warrant, the "suppression" of "GPS surveillance data," the application of a state evidentiary rule, and additional allegations of ineffective assistance of counsel. (D.I. 26 at 5-6). The instant Motion to Stay is Petitioner's second request to stay his habeas proceeding. In October 2019, Petitioner asked the Court to stay the instant proceeding so that he could present his ineffective assistance of counsel arguments (Claim Two) to the Delaware state courts. (*See* D.I. 13). The Court granted Petitioner's first motion to stay in December 2019, and the proceeding remained stay until March 2022, when Petitioner indicated he had finished exhausting state remedies for Claim Two. (*See* D.I. 17; D.I. 20)

A federal habeas court may stay a timely filed habeas petition containing both exhausted and unexhausted claims (*i.e.*, a "mixed petition") where: (1) good cause exists for the petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims are not plainly meritless; and (3) there is an absence of any indication that the petitioner engaged in potentially dilatory tactics. *See Rhines v. Weber*, 544 U.S. 269, 270, 277-78 (2005). Here, Petitioner has failed to demonstrate good cause for his failure to exhaust state remedies for these "new" claims, because he does not explain why he did not present the claims to the Delaware state courts in the Rule 61 proceeding he initiated after this federal habeas proceeding was stayed in 2019. Additionally, the "new" claims are not unexhausted but, rather, are procedurally defaulted, because they would be barred as untimely and successive under Delaware Superior Court Criminal Rule 61(i)(1) and (2) if they were presented to the Delaware state courts in a new Rule 61 motion. Staying a habeas proceeding to enable a petitioner to exhaust procedurally defaulted claims is futile because it accomplishes nothing. *See Barnhart v. Kyler,* 318 F. Supp. 2d 250, 263 (M.D. Pa. 2004)

(explaining that a "stay would be futile" when state rules clearly preclude additional review of a procedurally defaulted claim); *see also Walford v. Bosch*, 2021 WL 252425, at *5 (D. Minn. Jan. 26, 2021). For these reasons, the Court will deny Petitioner's Motion to Stay.

In turn, having already concluded that the instant Petition does not warrant relief, the Court will deny as moot Petitioner's Motion to Appoint Counsel.

### V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition fails to warrant federal habeas relief and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

### VI. CONCLUSION

For the reasons stated, the Court will deny all pending Motions and the instant § 2254 Petition without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate Order shall issue.